IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA J. GOMEZ,                                             Case No.

    Plaintiffs,

v.                                                           JURY TRIAL DEMANDED

CREDIT MANAGEMENT SOLUTIONS LLC
a/k/a CMS NY LLC,
a New York Limited Liability Company,

    Defendant.
_____/

COMPLAINT FOR DAMAGES WITH JURY TRIAL DEMAND

I.    INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq* (hereinafter "FDCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, *et seq* (hereinafter "FCCPA"); these laws prevent debt collectors and "persons" from, *inter alia*, engaging in abusive, deceptive, harassing, and unfair collection practices.

II.    JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1337, 1367, and Fla. Stat. § 559.77(1).

3. Venue lies in this District pursuant to 28 U.S.C. § 1391(d), as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

III.    PARTIES

4. Plaintiff, ANGELA J. GOMEZ (hereinafter "Plaintiff"), is a natural person who is domiciled in the county of Hillsborough, state of Florida, and is a "consumer" as that

        term is defined by 15 U.S.C. § 1692a(3) and Fla. Stat. § 559.55(2), and is also a person with standing to bring a claim under the FDCPA by virtue of being directly affected by a violation of the Act.

5. Defendant, CREDIT MANAGEMENT SOLUTIONS LLC a/k/a CMS NY LLC (hereinafter "CMS" or "Defendant"), is a for-profit entity organized under the laws of the state of New York, with its principal place of business located at 626 North French Road, Suite 3, Amherst NY 14228; it is alleged that Defendant is a "debt collector," as that term is defined by 15 U.S.C. § 1692a(6) and Fla. Stat. § 559.55(6), as, in the regular course of its business, it collects or attempts to collect debts owed or due or asserted to be owed or due another, and is also an "out-of-state consumer debt collector," as that term is defined by Fla. Stat. § 559.55(8) as its business activities in this state involve collecting or attempting to collect consumer debt from debtors located in this state by means of interstate communication originating from outside this state.

### IV. FACTUAL ALLEGATIONS

-Deceptive Voicemail Left by Defendant; July 25th, 2011-

6. On or about July 25, 2011 at approximately 6:46pm Plaintiff received a voicemail on her phone from phone number 877-906-8901.

7. In an intimidating tone, the male caller's voice message stated:

> This is solely intended for an Angela Gomez. My name is Chief Mediator Charles Edwards calling pertaining to the pending civil matter that's been filed out of your county district. I do need preference from either yourself or your legal counsel to contact the clerk's office to get the matter resolved. This is a theft by deception case. Toll-free here is 877-906-8901,

    direct extension is 562. I will be here in the office until 9pm eastern; a return call is expected. The case number you will be needing in this matter is 175430. If I don't hear from either yourself or your legal counsel I'm assuming that you are responsible and further proceedings will be taken. Thank you.

8. As a result of hearing the tone of this voicemail message and its implications that Plaintiff would be prosecuted criminally, Plaintiff felt very threatened, anxious, and afraid.

9. Out of fear, Plaintiff returned Mr. Edwards' ("Edwards") call at approximately 7:23pm, though there was no answer and Plaintiff did not leave a message.

10. Again out of fear, several minutes later and at approximately 7:25pm, Plaintiff again returned Edwards' call, this time reaching Edwards.

11. Edwards told Plaintiff that a civil suit for "theft by deception" was pending against her.

12. Edwards told Plaintiff that she needed to agree to payment arrangements immediately to avoid having the suit filed.

13. Edwards advised that the total amount due on the account was $1,824.00, but that he could agree to settle the account for $824.00.

14. Plaintiff stated that she could not afford to agree to that as she currently didn't have enough money to pay for her rent, food, and gas for her car.

15. After hearing this, Edwards told Plaintiff that he would give this information to "the attorney," and placed Plaintiff on hold.

16. After a brief moment, a woman answered the call and informed Plaintiff that a payment arrangement needed to be made tonight.

17. Just as she told Edwards, Plaintiff told the woman that she [Plaintiff] did not have the money to pay the $824.00 settlement.

18. The woman then offered to settle the account for $500.00 if Plaintiff made the payment that night.

19. Plaintiff again advised that she couldn't afford to agree even to that amount.

20. Plaintiff told the woman that she has been dependent on cash advances recently to help with her living expenses but that she can't seem to get "ahead" because just as she pays back a previous cash advance, she then needs to take out another to cover her next round of bills.

21. The woman placed Plaintiff on hold and when she came back she advised Plaintiff that she could accept a settlement of $824.00, in two payments: $300.00 on July 29th and $500.00 on August 26th.

22. Plaintiff told the woman that she did not have the money to make either payment and needed time to figure out her financial situation before she could agree to the payments.

23. The woman stated that there was no time because it had been three years since Plaintiff had made a payment.

24. Plaintiff again asked if she could have some time to figure this out and would then call the woman back.

25. The woman suggested to Plaintiff that she [Plaintiff] should just take out another cash advance to cover the $300.00 payment for July 29th.

26. Plaintiff said that she would need that cash advance to pay for her rent, food, and gas.

27. The woman advised that Plaintiff set up the payment arrangement that night and then call back if anything changes and Plaintiff could not then make the payment on the 29th.

28. Fearful of the legal action that was threatened against her, she reluctantly agreed to the payment arrangement.

29. Plaintiff felt pressured and obligated and felt that she had no other alternative, despite the fact that she knew at the time she agreed to the arrangement that she would not have the money to make the payment and repeatedly had advised Edwards and the woman of this fact.

30. After agreeing to this, Edwards came back on the line to take Plaintiff's bank information.

31. Edwards advised Plaintiff to the effect that "this part of the call would be recorded on a federal line."

32. Plaintiff gave her bank information to Edwards, authorizing the two payments as discussed.

33. Edwards again told Plaintiff that this was being recorded on a federal line and that if anything changed, Plaintiff should call Defendant back.

34. Following this phone call Plaintiff became emotionally upset, stressed out, and afraid, because she knew that she would not have the money to make these payments, and though she repeatedly told Defendant's representatives this fact, they would not take "no" for an answer.

-July 27th, 2011-

35. On or about July 27, 2011 at approximately 3:35pm, after having an opportunity to consider the authorization for payments, Plaintiff called Edwards via his direct phone extension to explain to him that she knew that she would not have the funds to cover the pre-authorized July 29th payment.

36. Plaintiff reached Edwards' voicemail but did not leave a message.

37. Plaintiff called back a few moments later, spoke to an operator and asked to speak with Mr. Edwards.

38. Plaintiff was placed on hold but soon thereafter ended the call as she realized that she could stay on the phone no longer, as her break from work was over and she had to resume her working duties.

39. Almost immediately after ending the call, Plaintiff's phone was called by Defendant but she could not answer it as she was already back into her work duties.

40. Almost one minute after the call, her phone was again called by Defendant, but she again did not answer.

41. Later that day at approximately 7:49pm Plaintiff placed a call to Defendant and this time left a voicemail for Edwards as he again did not answer.

42. In this message Plaintiff advised Edwards that she would not have the funds to cover the previously-authorized payment of $300.00 set to be debited on July 29th.

43. Plaintiff restated the severity of her financial situation and requested that both pre-authorized payments be cancelled as she knew that there would not be enough money to cover the transactions.

44. Plaintiff referenced the July 25th phone call in which she was told to call back "if anything changed."

-July 28th, 2011-

45. On or about July 28, 2011 at approximately 12:40pm, as Plaintiff had yet to hear from Defendant regarding the cancelled payments, Plaintiff placed a call to Edwards.

46. Edwards answered his line and Plaintiff asked him to confirm that he received the voicemail which she had left the previous evening.

47. Edwards stated that he had not yet checked any of his messages, briefly placed Plaintiff on hold, and then came back on the line.

48. Plaintiff restated the details of the message that she had left the night before and advised that she would not have any money to cover either of the upcoming payments.

49. Edwards asked Plaintiff when she thought that she would have the money, to which Plaintiff stated that she does not foresee having it in the near future.

50. She told Edwards that it doesn't make sense for her to tell him that she'll have the money the next month when she knows that it won't be there.

51. She told Edwards that she is simply trying to get out of the financial hole that she is in and that if she were to agree to those payments then she would not have enough money to cover rent, food, and gas, and that she also has medical and dental situations that she's currently dealing with and she simply will not have the money to agree to a payment plan with Defendant.

52. Edwards stated that he will relay this information to "the attorney" and placed Plaintiff on hold.

53. Momentarily, the call was answered by a male representative who did not identify himself.

54. It is alleged that this representative's tone was hostile towards Plaintiff.

55. The representative stated that he couldn't understand how it is that Plaintiff doesn't have any money.

56. Plaintiff explained that she doesn't have the money and it won't be in her account.

57. The male representative asked Plaintiff why she agreed to the payment arrangement if she didn't have the money, to which Plaintiff told him that Defendant was told she wouldn't have the money, but Plaintiff was told to set up the payments anyways, and to call back if something changed, and that is what she is now doing.

58. The male caller then told Plaintiff that he knew that she called the day before because Defendant has caller ID, and that Defendant had called Plaintiff back "thirteen times" and that Plaintiff did not answer.

59. Plaintiff corrected the representative by stating that she only received two calls, and that she could not answer because she was working.

60. The male representative advised Plaintiff that she would be facing a "theft by deception" suit, which is a type of fraud.

61. He then told Plaintiff that he knew that she has money in the bank to cover the payment because he confirmed this information.

62. Plaintiff then told him that he is wrong, and that she does not have $300.00 in the bank.

63. The male representative then asked Plaintiff to tell him how much money she has in her account.

64. Plaintiff stated that she does not have to provide him with this information.

65. The representative then stated that, since he already knows how much money is in the account, then she may as well tell him, and that if Plaintiff lied to him, then he would hang up.

66. Plaintiff again told the representative that she does not have to answer the question.

67. In response the representative stated, "Okay, we'll see you in court," and hung up the phone.

-August 3rd, 2011-

68. On or about August 3, 2011 Plaintiff received notice from her financial institution that a $300.00 debit to her account had been attempted by Defendant.

- Deceptive Voicemail Left by Defendant; August 4th, 2011-

69. On or about August 4, 2011 Plaintiff received a call from Defendant but she could not answer the phone.

70. Defendant left a voicemail message for Plaintiff.

71. In this message, in an intimidating tone, a male representative stated:

> This very very important message is for Angela Gomez. Mrs. Gomez, Tim Davis, Lead Arbitrator, Legal Department, HSBC Bank. Let me explain something to you, Ms. Gomez. Unless you call this office in the next hour, you're going to have to retain an attorney in Hillsborough County Court. I am monitoring and recording this phone call for Hillsborough County Court right now. I'm advising you that you will be responsible for a $2200.00 civil law penalty concerning this matter. An attorney will cost you $750.00. Today is your absolute last opportunity to make restitution on this matter. I could care less ma'am that you called this office and said you weren't gonna have the funds on this matter. We have you on recording giving us permission to take this money out of your account. The fact of the matter is as follows: you haven't made a payment since 2007. Okay? Today is your last opportunity or you're going to be charged with some very serious charges for maliciously frauding a bank. Simple as that. And you're going to have to answer to that. Tim Davis, 877-906-

> 8901, extension 557. Pending docket number 175430. I mean, you need to call here immediately or I will pull your w2 forms and send the authorities to your place of employment to serve you papers. Have a great day.

-Common Allegations-

72. Defendant was attempting to collect a defaulted obligation originally owed to HSBC, which was incurred for Plaintiff' personal, family, or household purposes, which is therefore a "debt" or "consumer debt," as those terms are defined by 15 U.S.C. § 1692a(5) and Fla. Stat. § 559.55(1).

73. It is alleged that Defendant's actions were performed with the intent to coerce Plaintiff into paying a defaulted consumer debt.

74. All acts or omissions of the employees/agents of Defendant were performed within the scope of their respective employment/agency, thus subjecting Defendant to vicarious liability for these acts under the doctrine of *respondeat superior*.

75. Defendant's communications failed to contain the "mini-miranda warning," as required by 15 U.S.C. § 1692e(11).

76. Defendant's usage of the phrase "pending docket number" was violative of the FDCPA as it is deceptive and unfair as it leads a debtor to believe that a lawsuit has been filed when, in actuality, one has not.

77. Defendant's usage of the titles "Chief Mediator" and "Lead Mediator" was violative of the FDCPA in that it is deceptive and unfair.

78. Edwards' advice that he was recording on a "federal line" was violative of the FDCPA in that it was deceptive and is a false representation.

79. Defendant's usage of the phrase "theft by deception" was violative of the FDCPA and FCCPA in that it is harassing, unfair, and deceptive.

80. Davis' representation that he was calling from "Legal Department, HSBC" was violative of the FDCPA and FCCPA in that it is deceptive and designed to cause a debtor to believe that Defendant's call originates from an attorney's office.

81. Davis' statement that Plaintiff "will be responsible for a $2200.00 civil law penalty concerning this matter" was violative of the FDCPA and FCCPA in that is deceptive, abusive, harassing, and unfair.

82. Davis' statement that Plaintiff was "going to be charged with some very serious charges for maliciously frauding a bank" was violative of the FDCPA and FCCPA in that it is deceptive and is designed to

83. Defendant's threats to bring legal action when it does not have the intention to file a lawsuit against Plaintiff were violative of the FDCPA and FCCPA.

84. Defendant's threats to bring legal action when it does not have the ability or right to file a lawsuit against Plaintiff were violative of the FDCPA and FCCPA.

85. Defendant's representatives' rude, harassing, and intimidating voices were violative of the FDCPA and FCCPA.

86. Defendant's representatives' statements that they are affiliated with the Hillsborough County Court and Clerk were violative of the FDCPA and FCCPA in that the statements were deceptive, unfair, and they simulate association with a government agency.

87. Defendant's attempt to debit Plaintiff's bank account, despite Plaintiff's withdrawal of her authorization (as instructed to do by Defendant) was violative of the FDCPA and FCCPA in that it was unfair, deceptive, and Defendant did not have the right to do so.

88. As a result of Defendant's acts or omissions Plaintiff suffered actual damages in the forms of stress, nervousness, sleeplessness, an inability to concentrate on her tasks at her place of employment, and fear that she may be arrested and/or prosecuted.

V. CLAIMS FOR RELIEF

-Count I-
Violations of the Federal Fair Debt Collection Practices Act

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 88.

89. The foregoing acts and omissions of Defendant and its employees/agents constitute numerous and several violations of the FDCPA, including, but not limited to, 15 U.S.C. §§ 1692c(a)(1), 1692c(a)(3), 1692d generally, 1692d(2), 1692d(6), 1692e generally, 1692e(4), 1692e(5), 1692e(7), 1692e(10), 1692e(11), 1692e(14), 1692f generally, 1692f(1), and 1692g generally.

90. As a result of the above violations of the FDCPA, Plaintiff is entitled to recovery for actual damages, statutory damages, and attorney's fees and costs.

-Count II-
Violations of the Florida Consumer Collection Practices Act

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 88.

91. The foregoing acts and omissions of Defendant and its employees/agents constitute violations of the FCCPA, including, but not limited to, Fla. Stat. §§ 559.72(7), 559.72(8), 559.72(9), 559.72(10), and 559.72(12).

92. As a result of Defendant's violation of the FCCPA, Plaintiff is entitled to a declaratory judgment that Defendant's conduct violated the FDCPA and FCCPA, and recovery for actual damages, statutory damages, punitive damages, and attorney's fees and costs.

## VI. RELIEF REQUESTED

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment against Defendant for the following:

a. Equitable relief in the form of a Declaratory Judgment that Defendant's acts constituted violations of the FDCPA and FCCPA, pursuant to Fla. Stat. § 559.77(2);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1) and Fla. Stat. § 559.77(2);

c. Statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A) and Fla. Stat. § 559.77(2);

d. Punitive damages, pursuant to Fla. Stat. § 559.77(2);

e. Costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3) and Fla. Stat. § 559.77(2); and

f. Such other and further relief that this Court may deem just and proper.

Respectfully submitted,

/s/ Joseph B. Battaglia
G. Donald Golden, Fla. Bar No.: 0137080
don@brandonlawyer.com
Joseph B. Battaglia, Fla. Bar No. 0058199
joe@brandonlawyer.com
THE GOLDEN LAW GROUP
808 Oakfield Drive, Suite A
Brandon, Florida 33511
Telephone: (813) 413-8700
Facsimile:   (813) 413-8701
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff demands trial by jury in this action.

/s/ Joseph B. Battaglia
Joseph B. Battaglia, Fla. Bar No. 0058199